UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MILLER, et. al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:04CV981 RWS |
| ) | |
| PHARMACIA CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before me on Plaintiffs' Motion for Partial Summary Judgment on the Issue of Whether Defendant Pharmacia is Liable for the Payment of Benefits Earned Under the Monsanto Company Plans [#12]. For the reasons stated below, the motion will be granted in part and denied in part.

## I.  Background

Defendant Pharmacia Corporation ("Defendant" or "Pharmacia" or "Old Monsanto") is a Delaware corporation with business facilities located within the jurisdiction of this Court. Before it changed its name to Pharmacia, Defendant was named Monsanto Company. Pharmacia is the same corporate entity as the Monsanto Company that existed during the time period pertaining to the facts of this case. The company currently known as Monsanto Company ("New Monsanto") is a spin-off corporation of Old Monsanto. The spin-off of New Monsanto occurred in 2000.

Prior to September 1, 1997, there were three components to Old Monsanto: a

chemicals component, an agricultural products and herbicide component, and a pharmaceuticals component. In 1997, the Board of Directors of Old Monsanto decided to spin-off the chemicals business into a newly created public company, Solutia, Inc. ("Solutia"). The spin-off was effectuated through a comprehensive and integrated package of more than thirty agreements (the "Distribution Contracts") designed to separate Old Monsanto's chemical business from its pharmaceuticals and agricultural products businesses. All of the Distribution Contracts were ultimately integrated into the Distribution Agreement, which governed the Distribution Contracts and served as the "blueprint" for the spin-off and creation of Solutia. The parties to the Distribution Agreement were Old Monsanto and Solutia. The Solutia spin-off was effective on September 1, 1997.

The consideration for receiving all of Old Monsanto's chemical assets was that Solutia agreed to assume all responsibility for all of the liabilities associated with Old Monsanto's chemical business, including liability for all employee benefits associated with it. See Distribution Agreement, Article I, § 1.01(19); Article IV, § 4.03. Additionally, the Employee Benefits and Compensation Allocation Agreement ("EBCAA"), an agreement between Old Monsanto and Solutia, stated that Solutia "shall assume and be solely responsible for all Liabilities" relating to employee benefits associated with the chemical business.

Prior to the Solutia spin-off, Old Monsanto maintained the Monsanto Company ERISA Parity Pension Plan, the Monsanto Company ERISA Parity Savings and

Investment Plan ("SIP Parity Plan"), the Monsanto Company Supplemental Pension Plan, and the Chemical Group Deferred Payment Plan (collectively, the "Plans"). Old Monsanto was the sponsor of the Plans, and it, or a committee it designated, was the administrator of the Plans. The Plans were what are commonly referred to as "top hat" plans. Under ERISA, a top hat plan is "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2). One purpose of the Plans was to attract and retain highly skilled and qualified executives and managers to Old Monsanto. Each Plan contained a provision that reserved Old Monsanto's right to amend or terminate the plan. For example, the SIP Parity Plan contained the following provision: "***Amendment And Termination***: Monsanto expects to continue the Plan described here. However, because it is impossible to predict all future conditions, Monsanto must reserve the right to amend or terminate the Plan. . . ." Under the terms of the Plans, Plaintiffs were "general creditor[s] to [Old Monsanto]." SIP Parity Plan at 8.

Although each Plaintiff was a participant in the Plans prior to the Solutia spin-off, the individual Plaintiffs fall into different categories regarding their relationship to Old Monsanto and Solutia. Some of the Plaintiffs were involved in the negotiation of the spin-off, but others were not. Some of the Plaintiffs retired prior to the spin-off.[1] Some of the Plaintiffs went to work for Solutia after the spin-off. Of those Plaintiffs who went

---

[1] Plaintiffs Hooper, Roth, Lanner, Berthold, Kunes, and Diehl retired prior to the spin-off.

to work for Solutia, some retired after a few weeks or months, but others stayed with Solutia for many years. The Plaintiffs who stayed with Solutia for only one to four months were part of Old Monsanto's special retirement program. They were transferred to Solutia to assist in the transition. Some of these Plaintiffs delayed their retirement in order to assist in the transition.

Several of the Plaintiffs who retired from Solutia elected to defer the distribution of their benefits. This allowed them to delay payments until after their total income decreased, which would have allowed them to receive their distributions at a presumably more favorable tax rate.

It is undisputed that there is no writing or documentation stating that Plaintiffs intended to release Old Monsanto from liability for benefits they earned under the top hat plans while working for Old Monsanto.

Solutia is now in bankruptcy proceedings before another court. Plaintiffs bring this lawsuit on the theory that they never relieved Old Monsanto of its obligation to pay them the benefits that vested under the top hat plans while they were employees of Old Monsanto. No Plaintiff in this Court is seeking to recover money earned while working for Solutia.

## II.     *Procedural History*

Plaintiffs filed the original Complaint on August 2, 2004, and they filed the Amended Complaint on September 9, 2004. Pharmacia filed its Answer and Affirmative Defenses on September 27, 2004. One of Pharmacia's affirmative defenses was that the

express terms of the Plans allowed them to amend or terminate the Plans and that they did so by assigning Old Monsanto's chemicals division liabilities to Solutia, making Solutia solely liable for the payment of Plaintiffs' retirement benefits. Another of Pharmacia's defenses was that, as to those Plaintiffs who went to work for Solutia, a novation of debtors occurred when Plaintiffs began working for Solutia after the spin or when Plaintiffs elected to defer the payment of their benefits.

On October 25, 2004, shortly before the Rule 16 Scheduling Conference was scheduled, Plaintiffs filed a motion for summary judgment on the issue of Pharmacia's liability. Instead of conducting a Rule 16 Conference, I held a series of hearings in which I determined what discovery Pharmacia would be allowed to conduct to adequately respond to the motion. Pharmacia conducted the requested discovery, and the issue was fully briefed as of May 2, 2005. I heard oral arguments from the parties on June 3, 2005.

## III.   *Summary Judgment Standards*

In considering whether to grant summary judgment, a district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . ." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those

portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

## IV.   *Analysis*

Plaintiffs argue that Old Monsanto remains liable to them for retirement benefits they earned while working for Old Monsanto. Defendant denies liability. First, Defendant argues that it is not liable to the Plaintiffs who retired prior to the spin or the Plaintiffs who went to work for Solutia because the spin-off documents terminated Old Monsanto's liability for the payment of Plaintiffs' retirement benefits and substituted Solutia for Old Monsanto with respect to that liability. Second, Defendant argues that the Plaintiffs who went to work for Solutia agreed to a novation of debtors with Old Monsanto by going to work for Solutia and looking to Solutia for the provision of their benefits. Third, Defendant argues that some Plaintiffs agreed to a novation of debtors with Old Monsanto when they elected to defer their benefits. Fourth, Defendant argues that some Plaintiffs already received benefits greater than that owed to them by Old

Monsanto.² Finally, Defendant argues that Plaintiffs are attempting to circumvent ERISA's requirement that top hat plans be unfunded and are therefore attempting to gain more security from the Plans than ERISA allows.

Plaintiffs reply that Defendant may not terminate its obligations for vested benefits because top hat plans are unilateral contracts and Plaintiffs have performed, that Defendant has not shown all of the elements required for a novation, and that Plaintiffs have not been paid more than they were owed by Old Monsanto.

This case contains issues of first impression. Although other federal courts have determined that top hat plans are to be interpreted in keeping with the principles of unilateral contract theory, the Eighth Circuit has not been presented with the issue. And I have not found any federal court cases where it was claimed that the parties effected a novation of debtors to a top hat plan agreement. As a result, I will address each step of the inquiry separately. First, I will discuss the issue of interpreting top hat plans in keeping with the principles of unilateral contract theory. Second, I will discuss the issue of novation of debtors as it relates to top hat plans.

    **A.**    **Top Hat Plans are Unilateral Contracts**

        *1.*    *Because the Plans at Issue are "Top Hat Plans," Federal Common Law of Contract Applies*

ERISA provides the framework from which I begin my analysis because it

---

²This argument goes to damages rather than liability, which is the subject of Plaintiffs' motion for summary judgment.

"extends broadly to include all employee benefit plans." In re New Valley Corp., 89 F.3d 143, 148 (3d Cir. 1996); Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 932 (8th Cir. 1999). However, because the plans at issue are top hat plans, they are specifically exempt from ERISA's provisions on participation and vesting, funding, and fiduciary responsibility. 29 U.S.C. §§ 1051(2); 1081(a)(3); 1101(a); see Emmenegger, 197 F.3d at 932; In re New Valley Corp., 89 F.3d at 148-49.

Top hat plans are, however, covered by ERISA's enforcement provisions. In re New Valley Corp., 89 F.3d at 149 (citing Kemmerer v. ICI Americas, Inc., 70 F.3d 281, 286-87 (3d Cir. 1995), cert. denied, 115 S. Ct. 1354 (1996)). They are also subject to Part 1 of Title I of ERISA, which includes reporting and disclosure requirements. 29 U.S.C. §§ 1021-1031; Miller v. Heller, 915 F. Supp. 651, 652 (S.D.N.Y. 1996); but c.f., 29 C.F.R. § 2520.104-23 (the filing of a statement describing the plan with the Department of Labor satisfies ERISA's reporting and disclosure requirements for top hat plan). Plaintiffs in this case are seeking to recover from Defendant under ERISA's enforcement provisions.

Because top hat plans are exempted from many of ERISA's substantive provisions, federal courts turn to federal common law when resolving disputes arising under these plans. E.g., Fink v. Union Central Live Ins. Co., 94 F.3d 489, 493 (8th Cir. 1996) ("[f]ederal common law may be used to fill gaps in ERISA, but not to upset Congress's policy choices") (internal citation omitted); Mohamed v. Kerr, 53 F.3d 911, 913-914 (8th Cir. 1995) (federal common law applies to disputes arising under ERISA, but which are

not covered specifically by a substantive provision of ERISA); In re New Valley Corp., 89 F.3d at 149 (applying federal common law of contract to dispute regarding top hat plans). In this case the issue is whether a novation occurred, so the federal common law of contract applies.

In applying the federal common law of contract to the facts of this case, I must look to the policy choices Congress made when it enacted ERISA. These policy choices will guide my analysis. I "may look to state law for guidance in developing federal common law, but it is inappropriate to apply state law if it conflicts with ERISA or its underlying policies." Mohamed, 53 F.3d at 913 (citing Brewer v. Lincoln Nat'l Life Ins. Co., 921 F.2d 150, 153 (8th Cir. 1990), cert. denied, 111 S. Ct. 2872 (1991)). "In crafting the federal common law of contract interpretation, the court looks to the body of state law, searching for common rules." Ambur v. United States, 206 F. Supp.2d 1021, 1026 (D.S.D. 2002).

2. *Congress's Policy Choices in Enacting ERISA*

Congress's policy choices in enacting ERISA have been oft-repeated by other courts. The Second Circuit articulated them succinctly in Gallione v. Flaherty:

> ERISA, enacted in 1974, is "landmark legislation that subjects a wide variety of employee benefit plans to complex and far-reaching rules designed to protect the integrity of those plans and the expectations of their participants and beneficiaries." Barrowclough v. Kidder, Peabody & Co., 752 F.2d 923, 929 (3d Cir. 1985), overruled on other grounds, Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110 (3d Cir. 1993). One of Congress's chief concerns was "to restore credibility and faith in the private pension plans designed for American working men and women." H.R. Rep. No. 533, 93d Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 4639, 4647 ("House

> Report"); S. Rep. No. 127, 93d Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 4838, 4849; see also id. at 4838 (discussing Senate bill's response "to the issue of whether American working men and women shall receive private pension plan benefits which they have been led to believe would be theirs upon retirement"); House Report at 4643 (noting "concern for loss of benefits by workers after long years of labor through circumstances beyond their control"). ERISA's statement of purposes noted that "many employees with long years of employment are losing anticipated retirement benefits," that employee benefit plans "have become an important factor affecting the stability of employment and the successful development of industrial relations," and that statutory protection is necessary to "assure the equitable character of such plans and their financial soundness." 29 U.S.C. § 1001(a). "Implicit in this congressional statement of purpose is the recognition that the persons to be aided by the statute lacked sufficient economic bargaining power to obtain contractual rights to nonforfeitable benefits." Darden v. Nationwide Mutual Insurance Co., 796 F.2d 701, 706-07 (4th Cir. 1986) (discussing scope of the term "employee" under ERISA), on remand, 717 F. Supp. 388 (E.D.N.C. 1989), aff'd, 922 F.2d 203 (4th Cir. 1991), rev'd on other grounds, 503 U.S. 318 (1992).

70 F.3d 724, 727 (2d Cir. 1995).

Top hat plans, however, are exempt from ERISA's substantive provisions. The DOL has opined that:

> in providing relief for "top-hat" plans from the broad remedial provisions of ERISA, Congress recognized that certain individuals, by virtue of their position or compensation level, have the ability to affect or substantially influence, through negotiation or otherwise, the design and operation of their deferred compensation plan, taking into consideration any risks attendant thereto, and, therefore, would not need the substantive rights and protections of Title I.

DOL Office of Pension & Welfare Benefit Programs (E.R.I.S.A.), Opinion 90-14 A, 1990 WL 123933, at * 1 (May 8, 1990) (hereinafter "DOL Opinion").

I find the DOL's opinion regarding the exemption of top hat plans from ERISA's substantive provisions to be persuasive. As a result, I will craft my analysis with

- 10 -

particular attentiveness to the Plaintiffs' ability, by virtue of their positions or compensation levels, "to affect or substantially influence, through negotiation or otherwise, the design and operation of their deferred compensation plan, taking into consideration any risks attendant thereto."

### 3. Under the Federal Common Law of ERISA, Top Hat Plans are Unilateral Contracts

Under the common law of ERISA, top hat plans are interpreted under the principles of unilateral contract law. Kemmerer, 70 F.3d at 286-89; Eastman Kodak Co. v. Bayer Corp., 369 F. Supp. 2d. 473, 478-79 (S.D.N.Y. 2005); Aiena v. Olsen, 69 F. Supp. 2d 521, 533 (S.D.N.Y. 1999); Carr v. First Nat'l Bank, 816 F. Supp. 1476, 1492 (N.D. Ca. 1993). Under unilateral contract principles, a top hat plan "is a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years." Kemmerer, 70 F.3d at 287 (quoting Pratt v. Petroleum Prod. Management Employee Sav. Plan., 920 F.2d 651, 661 (10th Cir. 1990); Eastman Kodak Co., 369 F. Supp. 2d at 478. This principle is in keeping with Congress's policy choices in exempting top hat plans from ERISA's substantive provisions:

> To the extent that congress relied on Top Hat participants' power to influence the contents of their plans in denying them the substantive protections of ERISA, it would be absurd to deny such individuals the ability to enforce the terms of their plans in contract. If [top hat plans were not interpreted under unilateral contract principles], it would be difficult to imagine what Top Hat participants would have the power to obtain "through negotiation or otherwise"—apparently, not much more than illusory promises.

Carr, 816 F. Supp. at 1492 (quoting DOL Opinion); Kemmerer, 70 F.3d at 288.

Defendant argues that "the Circuit Courts are split as to whether unilateral contract theory applies to nonqualified plans." Defendant relies on Gallione, 70 F.3d at 727-28, in making this argument. Defendant, however, has misread Gallione. Defendant cites to a quotation in Gallione from the district court's opinion. The district court had rejected plaintiff's contention that he should have been able to recover from defendant under unilateral contract theory, stating, "'[t]he Second Circuit has explicitly rejected the use of unilateral contract theory in a context analogous to that of top hat plans.'" Gallione, 70 F.3d at 726. The Second Circuit, however, disagreed with the district court's analysis and stated, "the premise of the exemption of top hat plans, i.e., the executives' ability to negotiate for terms that will suffice to protect their interests, appears to imply that an executive may negotiate contract rights that are enforceable. Accordingly, we are skeptical of the proposition that if such an employee has no viable pension claim under ERISA he necessarily also has no enforceable right to a pension pursuant to a contract." Id. at 729. The appellate court affirmed, however, because the plaintiff presented no evidence that a contract existed. Id. As a result, I find that the circuits are not in disagreement. It is well settled under the federal common law of ERISA that top hat plans are to be interpreted under the principles of unilateral contract theory.

I agree with the analysis of Carr and Kemmerer and with the dicta of Gallione. To prohibit Plaintiffs from enforcing the provisions of the Plans in contract would render the promises contained therein illusory. As a result, I will interpret the Plans in keeping with

- 12 -

the principles of unilateral contract theory.

> 4. *Plaintiffs who Retired Prior to the Spin Fully Performed and Defendant May Not Retroactively Amend or Terminate Its Agreement to Provide Retirement Benefits to Them*

Defendant argues that because the Plans gave Old Monsanto the right to amend or terminate the Plans, Old Monsanto had the ability to amend the Plans so that Solutia would be solely liable for payment of Plaintiffs vested benefits. Defendant argues that the because the EBCAA and the Distribution Contract specifically stated that "Solutia shall assume and be solely responsible" for the liabilities of the Plans, the Plans were effectively amended to terminate any liability Old Monsanto had to Plaintiffs for benefits vested while they were employed by Old Monsanto. In making this argument, Defendant attempts to distinguish this case from the line of cases that have held that an employer may not amend or terminate the promised benefits of a top hat plan after the employee has performed. E.g., Kemmerer, 70 F.3d at 288; Carr, 816 F. Supp. 1476. Defendant argues that the transfer of liability to Solutia was not a retroactive termination of the promised benefits because Plaintiffs could look to Solutia for the payment of their benefits and that those benefits were the same benefits they would have been able to look to Old Monsanto for prior to the spin-off.

In making its argument, Defendant relies on a number of cases that dealt with qualified, funded plans under ERISA. These cases are not helpful. I cannot apply the substantive provisions of ERISA from which top hat plans are expressly excluded to the facts of this case. Defendant also states that it transferred assets to Solutia to provide

funding for Plaintiffs' benefits.  Defendant argues that this is what would have been acceptable for funded employee benefit plans, so it should also be acceptable for top hat plans.  Defendant argues that to require it to pay any more money to Plaintiffs would give participants in top hat plans greater security than participants in regular ERISA plans.  This argument also misses the point.  Again, I cannot apply Part 3 (funding) of ERISA to these top hat plans because ERISA requires that they be unfunded.  29 U.S.C. § 1081(a)(3) (defining top hat plans as "unfunded" and exempting them from Part 3 of ERISA).

At least as to the Plaintiffs who retired prior to the spin-off, any amendment or termination of Plaintiffs' benefits amounts to a retroactive termination of benefits that is prohibited under the federal common law of ERISA.  E.g., Kemmerer, 70 F.3d at 287 ("even when a plan reserves to the sponsor an explicit right to terminate the plan, acceptance by performance closes that door under unilateral contract principles (unless an explicit right to terminate or amend after the participants' performance is reserved.")).  It is undisputed that no Plaintiff was a party to the EBCAA, the Distribution Agreements, or the Distribution Contract.  Defendant's novation argument does not apply to Plaintiffs who retired prior to the spin-off because there is no allegation by Defendant that they accepted employment from Solutia or elected to defer their benefits.  Defendant has not alleged that it explicitly reserved the "right to terminate or amend [the Plans] after the participants' performance," nor do the plan documents support a finding.  At the very best, Defendant merely assigned the debt it owed to these Plaintiffs to Solutia.  As a

- 14 -

result, unilateral contract principles prohibit Defendant from amending or terminating the benefits of Plaintiffs Hooper, Roth, Lanner, Berthold, Kunes, and Diehl that vested prior to the spin-off. Summary judgment on the issue of liability will be granted in favor of these Plaintiffs. Whether these Plaintiffs have suffered any damages, however, remains an issue.

### B. Top Hat Plans and the Law of Novation

#### 1. *There is No Existing Federal Common Law of Novation With Regard to Top Hat Plans*

I have not found any cases where a federal court has found a common law novation with regard to a top hat plan. As a result, I will examine the body of state law to determine what is required for a finding that a novation occurred. Then I will determine whether applying the common law requirements of novation to the facts of this case would be in harmony with Congress's policy choices regarding top hat plans.

#### 2. *State Common Law of Novation*

Under the states' common law, a contract of novation requires a previous valid obligation, the agreement of all parties to the new contract, the validity of the new contract, and the extinguishment of the old contract by the new contract. 58 Am. Jur. 2d Novation § 3; Williston on Contracts § 76:11 (4th ed.); 66 C.J.S. Novation § 4.

> It is well settled that novation is never to be presumed. The court will not presume that a creditor in the course of its business affairs released a debtor; creditors are not in the business of releasing debtors who have not paid. In the absence of a showing of an intent to release the first obligor, a mere assumption of a debt by a third party will be presumed to be merely additional security.

58 Am. Jur. 2d Novation § 37 (footnotes omitted).

> The intent of the parties is the most important factor in determining whether a novation has been accomplished, and the intention of the parties to effectuate a novation must be "clear and definite." The point in every case is whether the parties intend by their arrangement to extinguish the old debt or obligation and rely entirely on the new, or whether they intend to keep the old alive and merely accept the new as further security.
>
> The intention to substitute one contract for another so as to constitute a novation need not be expressed, but may be inferred from the circumstances, but novation is never to be presumed.
>
> The question of intention must be decided from all the circumstances.
>
> Intent means that there must be a meeting of the minds if a novation is to be valid and binding; thus, unilateral action by one party is typically insufficient to effect a novation.

58 Am. Jur. 2d Novation § 12 (footnotes omitted).

"As in the trial of civil actions generally, *the issue of novation is one of fact where the evidence is conflicting* or the terms of the agreement are equivocal or uncertain, but, if there is no doubt as to the terms of the agreement, the question is one of law for the court." 66 C.J.S. Novation § 32 (emphasis added).

> It is not necessary that a novation be in writing or that there be express words to evidence the intent to create a novation, but rather the intent may be determined from the actions of the parties given the contractual relationships that exist between or among them. In other words, the parties need not expressly manifest their intent to accomplish a novation because a novation may be inferred from the facts and circumstances surrounding the transaction.
>
> *Whether the addition of a new debtor is intended to operate as a release of the liability of the old debtor, absent an express agreement to that effect, is usually a question of fact and will only become a question of law when the state of the evidence is such that reasonable minds cannot differ as to its effect*.

Williston on Contracts § 76:12 (4th ed.) (footnotes omitted) (emphasis added).

>    3.   *Congress's Policy Choices Regarding Top Hat Plans are Consistent with Defendant's Contention that Agreements Between Select Employees and Their Employers Regarding the Provision of Benefits Under Top Hat Plans are Subject to Being Novated by Agreement Between the Parties*

Top hat plan participants are not like ordinary workers who may have little bargaining power with respect to their employers. Top hat plan participants are presumed to have the ability to affect or substantially influence the terms of their benefit contracts. A party with the ability to affect or influence the terms of their benefit contracts ought to be able to substitute one debtor/employer for another if they choose to do so. To find otherwise would be inconsistent with Congress's choice to exclude top hat plans from ERISA's substantive provisions. As a result, I find that under the federal common law, parties to a contract to provide benefits under a top hat plan can novate the terms of the plan to substitute one debtor for another.

>    4.   *Whether the Parties Intended a Novation is a Question of Fact*

At issue in this case is whether the parties intended to effect a novation. Plaintiffs have submitted affidavits claiming that they never intended to accept Solutia as their sole creditor and that they have continued to look to Old Monsanto for payment of their benefits. Defendant argues that summary judgment must be denied at this stage because the finder of fact can find that Plaintiffs did intend to effect a novation by looking at their actions. Defendant argues that the Plaintiffs who assisted in drafting the Distribution Contracts and Distribution Agreement intended there to be a novation of debtors because

the Distribution Contracts and Distribution Agreement clearly state that Solutia would be solely liable for the payment of the benefits of the top hat plans. Defendant claims that evidence of Plaintiffs' intent to effect a novation of debtors is that they either went to work for Solutia or deferred payment of their benefits to a later date.

As is discussed above, it is possible to determine the parties intent to effect a novation of debtors from the facts and circumstances surrounding the transaction. E.g., Williston on Contracts § 76:12 (4th ed.). But where there is conflicting evidence, as here, this is a question of fact to be determined by the finder of fact. 66 C.J.S. Novation § 32; Williston on Contracts § 76:12 (4th ed.). This is not the appropriate procedural posture for the Court to determine facts. As a result, I will deny the motion for summary judgment as to all Plaintiffs who went to work for Solutia after the spin-off.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment on the Issue of Whether Defendant is Liable for the Payment of Benefits Earned Under the Monsanto Company Plans [#12] is **GRANTED** in part and **DENIED** in part. Summary judgment will be **GRANTED** in favor of Plaintiffs Hooper, Roth,

Lanner, Berthold, Kunes, and Diehl. Summary judgment shall be **DENIED** for the remaining Plaintiffs.

Dated this <u>8th</u> Day of July, 2005.

                                                                       _____
                                                                       RODNEY W. SIPPEL
                                                                       UNITED STATES DISTRICT JUDGE