UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL E. MILLER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:04CV981 RWS |
| | ) | |
| PHARMACIA CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before me on the various discovery motions filed by the parties. Plaintiffs have sought both to produce evidence and discover evidence that Defendant claims is privileged. Plaintiffs have filed motions to compel, and Defendant has filed a motion for protective order and a motion to strike. Plaintiffs claim that Defendant has waived the attorney-client privilege by affirmatively putting privileged communications "in issue" in this case. Defendant denies that the "in issue" waiver rule applies to the facts of this case.

For the reasons set forth below, I find that Defendant has waived the attorney-client privilege by affirmatively putting privileged communications in issue. The scope of the waiver, however, is narrow and only applies to those communications Defendant put in issue.

**I. BACKGROUND**

I have previously set forth the background of this case:

Defendant Pharmacia Corporation ("Defendant" or "Pharmacia" or "Old Monsanto") is a Delaware corporation with business facilities located within the jurisdiction of this Court. Before it changed its name to Pharmacia, Defendant was named Monsanto Company. Pharmacia is the same corporate entity as the Monsanto Company that existed during the time period pertaining to the facts of this case. The company currently known as Monsanto Company ("New Monsanto") is a spin-off corporation of Old Monsanto. The spin-off of New Monsanto occurred in 2000.

Prior to September 1, 1997, there were three components to Old Monsanto: a chemicals component, an agricultural products and herbicide component, and a pharmaceuticals component. In 1997, the Board of Directors of Old Monsanto decided to spin-off the chemicals business into a newly created public company, Solutia, Inc. ("Solutia"). The spin-off was effectuated through a comprehensive and integrated package of more than thirty agreements (the "Distribution Contracts") designed to separate Old Monsanto's chemical business from its pharmaceuticals and agricultural products businesses. All of the Distribution Contracts were ultimately integrated into the Distribution Agreement, which governed the Distribution Contracts and served as the "blueprint" for the spin-off and creation of Solutia. The parties to the Distribution Agreement were Old Monsanto and Solutia. The Solutia spin-off was effective on September 1, 1997.

The consideration for receiving all of Old Monsanto's chemical assets was that Solutia agreed to assume all responsibility for all of the liabilities associated with Old Monsanto's chemical business, including liability for all employee benefits associated with it. See Distribution Agreement, Article I, § 1.01(19); Article IV, § 4.03. Additionally, the Employee Benefits and Compensation Allocation Agreement ("EBCAA"), an agreement between Old Monsanto and Solutia, stated that Solutia "shall assume and be solely responsible for all Liabilities" relating to employee benefits associated with the chemical business.

Prior to the Solutia spin-off, Old Monsanto maintained the Monsanto Company ERISA Parity Pension Plan, the Monsanto Company ERISA Parity Savings and Investment Plan ("SIP Parity Plan"), the Monsanto Company Supplemental Pension Plan, and the Chemical Group Deferred Payment Plan (collectively, the "Plans"). Old Monsanto was the sponsor of the Plans, and it, or a committee it designated, was the administrator of the Plans. The Plans were what are commonly referred to as "top hat" plans. Under ERISA, a top hat plan is "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2). One purpose of the Plans was to attract and retain highly skilled and qualified executives and managers to Old Monsanto. Each Plan contained a provision that reserved Old Monsanto's right to amend or terminate the plan. For example, the SIP Parity Plan contained the following provision: "***Amendment And Termination***: Monsanto expects to continue the Plan described here. However, because it is impossible to predict all future conditions, Monsanto must reserve the right to amend or terminate the Plan. . . ." Under the terms of the Plans, Plaintiffs were "general creditor[s] to [Old Monsanto]." SIP Parity Plan at 8.

Miller v. Pharmacia, 2005 WL 1661500 *1 (E.D. Mo. 2005) (footnote omitted).

After the spin-off, Plaintiffs went to work for Solutia.[1] Solutia is now in bankruptcy proceedings before another court and has not paid Plaintiffs the benefits they earned under their contracts with Old Monsanto. Plaintiffs are suing Pharmacia for those benefits on the theory that they never released it from liability.

In its Answer, Pharmacia raised the affirmative defense that an implied novation of debtors occurred when Old Monsanto and Solutia executed the Distribution Agreement and when Plaintiffs went to work at Solutia.

## II. NOVATION

The primary issue in this case is whether an implied novation of debtors occurred when Plaintiffs, being influential top-level management and general counsel for Old Monsanto, went to work for Solutia with the knowledge that Old Monsanto had entered into a contractual agreement with Solutia in which Old Monsanto and Solutia agreed that Solutia would be solely liable for Plaintiffs' retirement benefits.

The law of novation as it pertains to this case is as follows:

[A] contract of novation requires a previous valid obligation, the agreement of all parties to the new contract, the validity of the new contract, and the extinguishment of the old contract by the new contract.

> It is well settled that novation is never to be presumed. The court will not presume that a creditor in the course of its business affairs released a debtor; creditors are not in the business of releasing debtors who have not paid. In the absence of a showing of an intent to release the first obligor, a mere assumption of a debt by a third party will be presumed to be merely additional security.
>
> The intent of the parties is the most important factor in determining

---

[1] I granted summary judgment on the issue of liability in favor of the Plaintiffs who did not transfer to Solutia. Miller, 2005 WL 1661500 at *7.

> whether a novation has been accomplished, and the intention of the parties to effectuate a novation must be "clear and definite." The point in every case is whether the parties intend by their arrangement to extinguish the old debt or obligation and rely entirely on the new, or whether they intend to keep the old alive and merely accept the new as further security.
>
> . . . .
>
> It is not necessary that a novation be in writing or that there be express words to evidence the intent to create a novation, but rather the intent may be determined from the actions of the parties given the contractual relationships that exist between or among them. In other words, the parties need not expressly manifest their intent to accomplish a novation because a novation may be inferred from the facts and circumstances surrounding the transaction.

Miller, 2005 WL 1661500 at *8 (citations omitted).

### III. PLAINTIFFS' DECLARATIONS

Plaintiffs Lambert and Ringhofer are former general counsel for Old Monsanto. Both Lambert and Ringhofer have filed declarations claiming that the executives of Old Monsanto made a conscious and informed decision not to seek releases from Plaintiffs terminating Old Monsanto's liabilities for Plaintiffs' top hat plan benefits. Lambert and Ringhofer also claim that, as counsel for Old Monsanto, they believed that Old Monsanto's executives understood that absent express releases Old Monsanto would remain liable for Plaintiffs' benefits in the event that Solutia failed to pay.

Lambert and Ringhofer's declarations also reference communications of Old Monsanto regarding potential liabilities for contracts that are not part of the subject matter of this case.

Defendant has moved to strike Lambert and Ringhofer's declarations on the basis that the information discussed in the declarations is protected by the attorney-client privilege and because

both attorneys were duty bound not to reveal such information under Missouri Rule of Professional Conduct 4-1.6 (Confidentiality of Information).

## IV. "IN ISSUE" WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE

Plaintiffs argue that Pharmacia waived the attorney-client privilege by voluntarily injecting the issue of implied novation into this case, which requires the Court to determine whether the parties intended to effect a novation. Pharmacia argues that it has not put any party's state of mind in issue because the spin documents are unambiguous and clearly effected a novation of debtors.

"A client may waive the protection of the attorney-client privilege either expressly or by implication. . . . In determining whether there has been an implied waiver, two elements must be examined: (1) implied intention and (2) fairness and consistency." Sedco Int'l v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982).

"To waive the attorney-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case. *Most often, this occurs through the use of an affirmative defense*." Lorenz v. Valley Forge Ins. Co., 815 F.2d 1095, 1098 (7th Cir. 1987) (collecting cases) (emphasis added); e.g., United States v. Bilzerian, 926 F.2d 1285, 1292-93 (2nd Cir. 1991) (good faith defense waived privilege); Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash.1975) (qualified immunity). "It is the nature of an affirmative defense to raise a matter outside the scope of the plaintiff's *prima facie* case." Lorenz, 815 F.2d at 1098. (quotation and citation omitted) (emphasis in original).

Despite its contention to the contrary, Pharmacia has voluntarily injected the issue of the

parties' intentions into this case. The spin documents are unambiguous only to the extent that as between Old Monsanto and Solutia, Solutia agreed to be solely liable for Plaintiffs' unpaid benefits. The plain language of the spin documents does not, however, purport to be an agreement between Old Monsanto and Plaintiffs releasing Old Monsanto from its liabilities. Nor were any of the Plaintiffs a party to the spin documents.

Because intent is "the most important factor" in determining whether a novation was effected, and because intent is to be determined "from all the circumstances," I find implied intention to waive the attorney-client privilege regarding the issue of Old Monsanto's or Plaintiffs' intent to effect a novation of debtors.

I also find that fairness and consistency will be promoted by finding an implied waiver of the attorney-client privilege. Plaintiffs would be prejudiced if Pharmacia were allowed to assert that it intended for a novation of debtors to result from the spin-off and at the same time withhold evidence of its intent that may tend to disprove its assertions.

As a result, I find that Pharmacia waived its attorney-client privilege as to communications evidencing either parties' intent to effect a novation.

## V. CONFIDENTIALITY

Pharmacia also contends that Lambert and Ringhofer were duty bound not to reveal information relating to their representation of Old Monsanto by Missouri Rule of Professional Conduct 4-1.6. Rule 4-1.6 states:

> (a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).

> (b) A lawyer *may* reveal such information to the extent the lawyer reasonably believes necessary:
>
> . . . .
>
> (2) *to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client* . . .

Mo. S. Ct. R. 4-1.6 (emphasis added).

Lambert and Ringhofer are not prohibited from disclosing communications evidencing Old Monsanto's intent to effect or not to effect a novation under Rule 4-1.6. First, under the plain language of the Rule, Lambert and Ringhofer are permitted to reveal information they believe reasonably necessary to establish their claims against Pharmacia in this litigation. Second, the drafters of Rule 4-1.6 recognized that "[t]he principle of confidentiality is given effect . . . [by the law of] attorney-client privilege . . ." Id. cmt. As a result, to the extent that Pharmacia's attorney-client privilege has been waived, Lambert and Ringhofer's duty of confidentiality has been waived as well. However, the scope of the waiver is narrow. Information that is not related to Old Monsanto's intent to effect a novation of debtors substituting Solutia as the sole debtor for Plaintiffs' retirement benefits is still confidential under Rule 4-1.6.

## VI.   CONCLUSION

Pharmacia has waived the attorney-client privilege as to evidence relevant to each party's intent to effect a novation of debtors substituting Solutia as the sole debtor for Plaintiffs' retirement benefits. I will withhold ruling on the discovery motions to allow the parties to resolve the remaining discovery issues between themselves in light of this Memorandum and Order.

The parties shall notify the Court, within twenty days of the date of this Memorandum and Order, whether and to what extent the issues raised in the pending discovery motions and the

motion to strike have become moot.

Accordingly,

**IT IS HEREBY ORDERED** that the parties shall notify the Court in writing and **within twenty (20) days of the date of this Memorandum and Order** whether and to what extent the issues raised in the pending discovery motions and the motion to strike have become moot.

Dated this <u>16th</u> day of May, 2006.

                                                             RODNEY W. SIPPEL
                                                             UNITED STATES DISTRICT JUDGE